HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCO ANTONIO ARANGO-AMAYA,

Petitiner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondent.

CASE NO. 2:26-cv-00815-RAJ

ORDER

## I.      INTRODUCTION

THIS MATTER comes before the Court on Petitioner Marco Antonio Arango-Amaya's petition for writ of habeas corpus. Dkt. # 4. The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** the petition.

## II.      BACKGROUND

Petitioner is a citizen of Colombia. Dkt. # 8 ¶ 3. He entered the United States on or about October 14, 2024 without inspection and was detained shortly after. *Id.* He was issued a Notice to Appear charging him as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *Id.* On October 15, 2024, Petitioner was

ORDER – 1

released on an Order of Release on Recognizance ("OREC") and placed into an Alternative to Detention ("ATD") program. *Id.* ¶¶ 4–5. The OREC states Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226]." Dkt. # 9-2 at 2.

According to the government, Petitioner violated his ATD conditions on multiple occasions. In support of this assertion, the government submits a declaration from deportation officer Delano Dumo, which states Petitioner's ATD program "included both biometric and in-person check-ins." Dkt. # 8 ¶ 5. Notably, aside from the declaration, there is no other evidence in the record regarding Petitioner's ATD program and the program's requirements. Mr. Dumo's declaration goes on to state that Petitioner violated his ATD conditions by "[m]issing biometric check-ins on 12/10/24, 1/21/25, 1/28/25, 3/18/25, 4/9/25, 4/22/25, and 7/8/25," "[t]raveling outside an approved zone on 3/18/25, 4/22/25, 11/1/25, and 1/11/26," "[f]ailing home visits on 9/11/25, 11/6/25, and 12/30/25," and "[m]issing an in-person office visit on 11/6/25." *Id.* ¶ 6. Again, aside from the declaration, there is no evidence in the record showing Petitioner was required to attend these various appointments, that he missed the appointments, or that he was notified of the ATD violations.

Petitioner was taken into ICE custody on January 12, 2026 following a traffic stop. *Id.* ¶ 7. Mr. Dumo's declaration states Petitioner was stopped in West Virginia for a traffic violation and "ICE determined Petitioner did not have permission to travel to West Virginia and requested he be placed in custody." *Id.* ¶ 7. In contrast, the Form I-213 report of Petitioner's arrest does not explicitly address any alleged ATD violation. It states that after pulling Petitioner over for an unspecified "traffic violation," the officer "called SDDO Blair to help determine the subject's immigration status," and "[d]uring the interview it was determined that the subject was on ATD in the Atlanta DCO, and the 287g officer was given the ok to place ARANGO in custody." Dkt. # 9-1 at 3. The Form I-213 also notes Petitioner "has no known criminal history." *Id.* Mr. Dumo's declaration states that on

ORDER – 2

January 15, 2026, "ICE determined that Petitioner will be detained and revoked Petitioner's OREC." Dkt. # 8 ¶ 8. However, there is no documentation of the revocation of Petitioner's OREC in the record.

Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") on January 31, 2026, where he remains today. *Id.* On February 27, 2026, an immigration judge ordered Petitioner's removal to Honduras or Ecuador. *Id.* ¶ 9. The order is pending appeal. *Id.* ¶ 10.

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.  DISCUSSION

#### A.    Bruce Scott is Added as an Additional Respondent

Petitioner, proceeding *pro se*, listed "ICE Field Office Director" as the sole respondent in this case. Dkt. # 4. The government does not challenge the designated respondent. *See generally* Dkt. # 7. The proper respondent for a § 2241 habeas petition, however, is the warden of the facility where the petitioner is detained. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) ("*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition"). Naming the appropriate respondent has jurisdictional implications. *See id.* at 1194–95 (finding "failure to name the Facility Administrator renders the district court's exercise of jurisdiction erroneous."). Accordingly, in light of the Court's obligation to

ORDER – 3

construe *pro se* filings leniently, the Court will direct the clerk to add Bruce Scott, Warden of NWIPC, as a respondent in this case. *See Alejo Amezcua v. Scott*, No. 26-cv-820, 2026 WL 1004610, at *1 n.1. (W.D. Wash. Apr. 14, 2026) ("Consistent with its obligation to construe pro se filings leniently, the Court substitutes NWIPC Warden Bruce Scott as the respondent in this matter."); *Triminio Martinez v. ICE Field Office Director*, No. 26-cv-748, 2026 WL 925625, at *1 n.1 (W.D. Wash. Apr. 4, 2026) (in *pro se* case, directing clerk to name Bruce Scott as a respondent).

**B.      Petitioner is Detained Pursuant to 8 U.S.C. § 1226(a)**

Respondents argue that Petitioner "is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A)." Dkt. # 7 at 5. As Respondents acknowledge, however, "courts in this district have found that individuals in similar situations to Petitioner are subject to Section 1226(a), not Section 1225(b)." *Id.* The Court likewise finds Petitioner is detained under Section 1226(a).

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Courts in this District have repeatedly rejected the government's position and have instead consistently concluded that petitioners who are released on an OREC and subsequently re-detained are subject to Section 1226(a), not Section 1225(b). *See, e.g.*, *Rana v. Bondi*, No. 26-cv-244, 2026 WL 472800, at *3 (W.D. Wash. Feb. 19, 2026). This includes petitioners who, as here, appear to have been "apprehended upon arrival" prior to their initial release on recognizance. *See Del Valle Castillo v. Wamsley*, No. 25-cv-2054, 2025 WL 3524932, at *7, (W.D. Wash. Nov. 26, 2025) (citation omitted) (determining that petitioner, who had been apprehended on arrival, released on an OREC, and later re-

ORDER – 4

detained, was subject to discretionary detention under § 1226(a)); *Diaz-Aguero v. Noem*, No. 26-cv-00637, 2026 WL 915053, at *2 (W.D. Wash. Apr. 3, 2026) (same). The key question applicable to a petitioner apprehended upon arrival turns on "the government's treatment" of the petitioner: "where a petitioner has been 'treated by [the government] as subject to discretionary detention under section 1226,' rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo*, 2025 WL 3524932, at *5 (quoting *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)).

Here, the record demonstrates that Petitioner is subject to detention under Section 1226(a). Petitioner was released on an OREC, rather than humanitarian parole, in October 2024, and the OREC specifically provides that Petitioner's release was "[i]n accordance with" 8 U.SC. § 1226. Dkt. # 9-2 at 2. This language underscores the government's treatment of Petitioner as subject to Section 1226(a) rather than Section 1225(b). *See, e.g.*, *Aguilar-Graterol v. Warden/Facility Administrator, Nw. Det. Ctr.*, No. 26-cv-00997, 2026 WL 1162705, at *4 (W.D. Wash. Apr. 29, 2026) (OREC specifying that petitioner's release was "pursuant to 'section 236 of the Immigration and Nationality Act'" indicated government's treatment of petitioner as "subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until [his subsequent re-detention]"); *Soto v. Bondi*, No. 26-cv-00652, 2026 WL 972731, at *5 (W.D. Wash. Apr. 10, 2026) (same); *Fiston v. Bondi*, No. 26-cv-00904, 2026 WL 926064, at *3 (W.D. Wash. Apr. 6, 2026) (noting that presence of this language made petitioner's case "even stronger").

The government relies on *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) in support of its position. Dkt. # 7 at 3, 5. However, *Buenrostro-Mendez*, an out-of-circuit opinion, is not binding and courts in this District have declined to adopt its holding. *See, e.g.*, *Barrios Osorio v. Bondi*, No. 26-cv-317, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026) (finding government's reliance on *Buenrostro-Mendez* unpersuasive).

ORDER – 5

The Court accordingly concludes that Petitioner's detention is governed by Section 1226(a), not Section 1225(b).  Even if Petitioner were detained under Section 1225(b), however, Respondents' statutory authority cannot replace the constitutional requirement of procedural due process.  *See P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Tarbakhov v. Warden of Nw. Det. Ctr.*, No. 26-279, 2026 WL 653705, at *3 (W.D. Wash. Mar. 9, 2025) (rejecting argument that petitioner is subject to mandatory detention under § 1225(b) because "[r]egardless of the reason for Petitioner's detention, the Government remains subject to an obligation to 'effectuate [his] detention in a manner that comports with due process.") (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).  As such, the Court finds in the alternative that "the due process requirements articulated in this order apply regardless of whether [Petitioner] is detained under Section 1225(b) or 1226(a)." *Herrera Gomez v. Wamsley*, No. 25-cv-2642, 2026 WL 279966, at *3 (W.D. Wash. Feb. 3, 2026) (citing *Flores Torres v. Hermosillo*, No. 25-cv-02687, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026)).

### C.    Petitioner's Detention Violates Procedural Due Process

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

ORDER – 6

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in that context, including in circumstances similar to this case. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–24 & 1321 n.4 (W.D. Wash. 2025) (collecting cases and applying *Mathews* test to noncitizen released on recognizance and re-detained without prior notice and hearing).

### i.    Petitioner has a protected interest in his liberty.

With respect to the first *Mathews* factor, the "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

In this case, when Petitioner was released on his recognizance in October of 2024, he "took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025) (citing *Doe*, 787 F.Supp.3d at 1093). During the fifteen months that Petitioner was on release, he lived in the community and had no known criminal violations. *See* Dkt. # 9-1 at 3 (Form I-213 noting Petitioner has "no known criminal history"). In

ORDER – 7

reliance on his liberty interest, Petitioner applied for and obtained employment authorization and pursued immigration relief. *See* Dkt. # 8 ¶ 9 (referencing "Petitioner's applications for relief from removal"); Dkt. # 9-1 at 3 (noting Petitioner has a "US Employment Authorization card"); Dkt. # 10 at 1 ("I have an application of asylum which is pending"); *Caisa Telenchana v. Hermosillo*, No. 26-cv-00363, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (petitioners released on ORECs, including several who had applied for asylum and/or obtained work permits while on release, had "established liberty interests in the months and years they were permitted to live in the United States"). The first *Mathews* factor therefore weighs in favor of Petitioner.

### ii.    The risk of erroneous deprivation of liberty is high.

With respect to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high. Respondents argue "Petitioner accrued multiple ATD violations prior to his arrest and was encountered in [a] state where he did not have permission to be." Dkt. # 7 at 7. The Court does not find this justification, based on the present record, supports detention without notice and an opportunity to be heard.

First, there is insufficient evidence to suggest Petitioner was arrested based on an individualized assessment of his flight risk or danger to the community. Although the government contends Petitioner was arrested as a result of ATD violations, including being outside a permitted zone at the time of arrest, the record does not support this. The Form I-213 report of Petitioner's arrest merely states the arresting officer "called SDDO Blair to help determine the subject's immigration status" and was "given the ok" to arrest Petitioner after it was determined that Petitioner was "on ATD in the Atlanta DCO." Dkt. # 9-1 at 3. Based on this description, it is entirely unclear that Petitioner was arrested based on any individualized assessment of his flight risk or dangerousness. Rather, it appears the officer was given the "okay" to arrest Petitioner after it was determined that Petitioner lacked immigration status and was on ATD (not necessarily that he had violated his ATD). The Form I-213 makes no mention of the other ATD violations that the government now relies

ORDER – 8

on to support Petitioner's arrest.  Under these circumstances, the lack of procedures used prior to Petitioner's detention creates a high risk of erroneous deprivation of liberty.  *See E.A. T.-B.*, 795 F. Supp. 3d at 1323 ("ICE's initial decision to release Petitioner was based on a consideration of the danger that Petitioner posed to the community and the likelihood that he would appear for future hearings . . . arresting and re-detaining him at this point without first reconsidering those factors poses a significant risk of an erroneous deprivation of Petitioner's liberty interest in continued release."); *Randhawa v. Noem*, No. 26-cv-461, 2026 WL 628299, at *2 (W.D. Wash. Mar. 6, 2026) (finding high risk of erroneous deprivation where respondents "having earlier released [petitioner] because he was not a flight risk or a danger to the community, re-detained him without considering these factors" and the circumstances of his ATD violation); *Sarwari v. Wamsley*, No. 26-cv-121, 2026 WL 279968, at *6 (W.D. Wash. Feb. 3, 2026) ("where Petitioner has been released upon findings . . . that he did not pose a flight risk or a danger . . . and where it is undisputed that he was arrested with no notice of the reasons for his arrest, the risk of erroneous deprivation is high.").

Second, aside from Mr. Dumo's declaration, there is no evidence in the record corroborating the alleged ATD violations.  The government's submissions do not include any primary evidence of the terms of Petitioner's ATD program.  Significantly, there is no primary evidence that Petitioner was prohibited from traveling to certain locations and that he was therefore in violation of his ATD at the time of arrest.  *See Sarwari*, 2026 WL 279968, at * 5 n.5 (noting the court has "no information about those [ATD] requirements beyond the electronic monitoring and curfew referenced in the Order of Release itself").  There also is no documentation that Petitioner was directed to attend the various check-ins and appointments identified in Mr. Dumo's declaration.  There is no documentation that he missed the identified check-ins and appointments or traveled outside an approved zone on the dates alleged.  There is no documentation that Petitioner was ever notified of the alleged violations.  The Court also notes there is no evidence of a written revocation of

ORDER – 9

Petitioner's OREC.  Without more corroborating detail, the alleged ATD violations do not justify detention without notice and an opportunity to be heard.  *See id.*, at * 5 ("If Respondents wished Petitioner's alleged ATD violations to be considered, they could and should have provided them to the Court").

Third, the Court notes that many of the alleged ATD violations occurred months, or even a year, prior to Petitioner's arrest.  *See* Dkt. # 8 ¶ 6 (listing ATD violations ranging from December 2024 to December 2025).  Respondents "offer no explanation for why it took ICE so long to act" after the earlier violations, and the record suggests that "ICE did not deem these alleged technical violations sufficiently serious to warrant a return to custody."  *Kumar v. Noem*, No. 26-cv-294, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026); *see also Bravo-Zambrano v. Bondi*, No. 26-cv-167, 2026 WL 879245, at *4 (W.D. Wash. Mar. 31, 2026) (citing *Martinez Hernandez v. Andrews*, No. 25-cv-1035, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025))("Additionally, given that the Government waited a year after the first OREC infraction to take enforcement action, it entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered "impracticable[.]").

Fourth, even if ICE considered Petitioner's ATD violations, the violations do not support immediate detention without notice and an opportunity to be heard.  As courts throughout this District and Circuit have repeatedly found, "a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing."  *E.G.M. v. Scott*, No. 26-cv-0744, 2026 WL 914803, at *5 (W.D. Wash. Apr. 3, 2026) (collecting cases).  In other words, "[u]ltimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his [release order] violations," it does not follow that "Petitioner can be detained for those violations without a hearing."  *E.A. T.-B.*, 795 F. Supp. 3d at 1322.  Therefore, the second *Mathews* factor favors Petitioner.

ORDER – 10

### iii. Respondents' interest in re-detaining Petitioner without due process is minimal.

As to the third *Mathews* factor, "the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Id.* at 1324. Indeed, "[t]he fact that Respondents have not even alleged that Petitioner poses a flight risk or represents a danger to any person undermines any suggestion that Respondents' interests must be satisfied immediately." *Sarwari*, 2026 WL 279968, at *6.

Accordingly, the third *Mathews* factor, like the first two, weigh in Petitioner's favor. Because all three *Mathews* factors favor Petitioner, the Court concludes that Respondents' re-detention of Petitioner and revocation of his OREC violated his procedural due process rights.

### D. Remedy

Having determined that Petitioner was re-detained without due process, the Court must impose the appropriate remedy. Respondents argue that "should this Court conclude that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), then a bond hearing subject to Section 1226(a) is the appropriate remedy, not release." Dkt. # 7 at 7. Petitioner seeks "his release from the custody of ICE due to the fact that such custody violates the due process rights of Petitioner." Dkt. # 4 at 1.

The Court finds that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, No. 26-cv-506, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, No. 26-cv-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the

ORDER – 11

proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original).  As other courts in this District and Circuit have found, post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty.  *E.A. T.-B.*, 795 F.Supp.3d at 1324 (quoting *Domingo v. Kaiser*, No. 25-cv-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4.  Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

ORDER – 12

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner Marco Antonio Arango-Amaya's Petition for Writ of Habeas Corpus,  Dkt. # 4.  The Court **ORDERS** that Respondents:

(1)    Shall immediately release Petitioner from custody under the terms of his preexisting Order of Release on Recognizance; and

(2)    Shall file with the Court a notice within two (2) business days confirming his release.

The clerk is directed to add Bruce Scott, Warden of Northwest ICE Processing Center, as a respondent in this case.  Petitioner's Motion to File Late Traverse, Dkt. # 10, shall be terminated as moot.


Dated this 5th day of May, 2026.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 13